Van Voorhis, J.
(dissenting). One may assume, perhaps, that these plaintiffs-appellants will somehow work out the problems of their automobile paint shops with the public authorities, but we are concerned with the law of the case which presents, it seems to me, one of the most difficult and challenging problems of the day. The former Bureau of Smoke Control, superseded now by the Department of Air Pollution Control, has formulated specific and tangible standards to be applied in controlling air pollution resulting from coal and other fuel burning equipment. When it comes to other forms of air pollution, however, such as the overspray from automobile paint shops, the Commissioner and Board of Air Pollution Control are left by sections 1072 and 1073 of the City Charter, and sections 1072-1.0-1074-3.0 of the *732 Administrative Code, to the elimination of the emission into the open air “ of harmful or objectionable substances ” which, in tbe case of paint shops, have not been further defined by rules of the department. Such rules are authorized to be adopted by section 1075 of the City Charter, but, although it was announced several years ago that rules prescribing standards of air pollution for paint shops were being formulated, none have as yet been adopted. For the purposes of this discussion I am assuming that under Matter of City of Utica v. Water Pollution Control Bd. (5 N Y 2d 164) there could be a delegation of power to the Board of Air Pollution Control to determine degrees of permitted pollution or required purity of the atmosphere, as was held there in regard to the waters of the State. In the City of Utica case as well as Matter of Town of Waterford v. Water Pollution Control Bd. (5 N Y 2d 171), rules prescribing standards had been adopted by the Water Pollution Control Board. I see no constitutional objection to requiring paint shops to file plans and specifications for examination by the department which, indeed, may be important in connection with the formulation of suitable rules governing the conduct of this industry insofar as air pollution is concerned. What seems objectionable from a constitutional standpoint is the requirement of rules 2.1 and 6 of the Bules and Begulations and sections 1072 of the City Charter and 1072-1.0 of the Administrative Code of an “ Operating Certificate ” to enable such concern to do business, with no further standards being prescribed in advance than that emissions shall be prohibited into the open air of ‘ ‘ harmful or objectionable substances.” This means that any paint shop can be prevented from opening or be closed down according to what is detected by the nose and eyes of the individual inspector, or according to what an examiner of the plans and specifications may think will happen that might be bad. All of this is in addition to and may be in conflict with what is required more specifically regarding paint shops by the Board of Standards and Appeals, the Building Department, the Fire Department or the Labor Department. If a filter is not installed in a spray booth, for example, it is said that the board will not approve the installation, whereas, if a filter is installed, the Fire Department will consider the equipment to constitute a fire hazard and charge the operator with a violation. The very existence of more specific standards in case of the approval of such installa *733 tions by these other branches of the city government, for the protection of those who work in paint shops and for fire protection, highlights the lack of standards governing the granting or withholding of operating certificates when it comes to emissions into the open air. These Charter and Administrative Code provisions, unimplemented by standards prescribed by rules, would apparently render liable to punishment the installer of paint spraying machinery, even though it were done in accordance with the best engineering practice, if it were inefficiently controlled or operated so as to result in what some inspector considered to be a harmful or objectionable emission into the air. It is idle to say that refusals to grant operating certificates can be reviewed in court. If the administrative determination can be made without applying standards then there is no basis on which the determination can be reviewed in court.
Every level of government is confronted today with the problem of wide and uncharted discretionary powers of governmental officials over many phases of the life and work of the people. No more challenging or difficult or important problem in government confronts the American people today. It is the principal means by which Americans are passively losing their liberties. We have professed, at least, to believe in prescribed standards to govern administrative officials. In the opinion by Judge Fuld in the City of Utica case (supra, p. 169), the court said that it is enough if the Legislature lays down “ an intelligible principle ”, specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated. Some legislative standards were prescribed there and still more definite rules for guidance. If we are to assume that the formulation of classifications of purity or pollution is properly delegated to the Board of Air Pollution Control, as it was in the City of Utica case to the Water Pollution Control Board, the fact remains that the Board of Air Pollution Control has not adopted standards through rules as was done by the Water Pollution Control Board. Elimination of discharge into the air of “ harmful or objectionable substances ” is a mere statement of policy, not a formulation of what is permitted or prohibited, as is carefully done by the same enactment in the case of soot and other emissions from fuel combustion. In the absence of such formulations, at least by rule, a requirement is invalid that *734 an operating certificate be obtained on the basis of nobody knows what standard or principle.* Neither rule nor local law sets forth any description or definition of what constitutes toxic emissions of paint overspray to bring them under the condemnation of this law.
Laudable as it may be to endeavor to purify the atmosphere, the absence of rules prescribing some standards for the operation of paint shops or how much overspray may be emitted, indicates lack of study and effort devoted to this cause. The formulation of such standards should not be unduly difficult if the city devoted its mind and energies to the task. The board did not think it would be too difficult two years ago, when it announced that rules prescribing standards would soon be forthcoming. The operation of automobile spray paint shops is not forbidden, but it is impossible to know what kinds of shops are allowed and which are prohibited, nor on what basis the administrative officers charged with enforcement are to be persuaded or placated into issuing operating licenses.
The judgment appealed from should be reversed and plaintiffs’ motion for judgment on the pleadings granted, except that the filing of plans and specifications of paint spray installations should not be enjoined.
Judgment modified, etc.

 Rule 1.3.2 hardly can be said to furnish a standard of purity in the case of paint emissions, since its reference to particulate matter in excess of 0.85 pound per thousand pounds of gasses applies only to smoke, and was taken word for word from the Rules and Regulations of the Bureau of Smoke Control adopted in 1950, and, by its terms, is applicable only to “ products of combustion.”